TOWNSHIP OF OLD BRIDGE BOARD OF EDUCATION,
PETITIONER-APPELLANT, v. OLD BRIDGE EDUCATION
ASSOCIATION, RESPONDENT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 14, 1983—Decided January 19, 1984.

Before Judges BISCHOFF, PETRELLA and BRODY.

*Steven J. Tripp* argued the cause for appellant (*Wilentz, Goldman & Spitzer,* attorneys; *Harold G. Smith* of counsel; *Gordon J. Golum* and *Steven J. Tripp* on the brief).

*Sanford R. Oxfeld* argued the cause for respondent (*Rothbard, Harris & Oxfeld,* attorneys; *Sanford R. Oxfeld* of counsel and on the brief).

Office of General Counsel, Public Employment Relations Commission, submitted statement in Lieu of Brief on behalf of Public Employment Relations Commission (*Don Horowitz,* Dep. Gen. Counsel on the statement).

The opinion of the court was delivered by

BRODY, J.A.D.

The Township of Old Bridge Board of Education (Board) appeals a determination of the Public Employment Relations Commission (PERC) that reduction in force (RIF) lay-off procedures are negotiable. We affirm that determination with some qualifications.

Barbara Wolfe, formerly employed by the Board as a tenured "⅕ part-time" business education teacher,[1] was laid off because of reduced class enrollment. The Board may lay off tenured teachers "whenever, in the judgment of the board it is advisable ... because of reduction in the number of pupils

---

[1] We assume this means she worked one day a week.

. . . ." *N.J.S.A.* 18A:28–9. Wolfe was notified by a letter dated July 1, 1981, not to return for the 1981–82 school year. Her contract employment rights appear in an agreement (the contract) between the Board and the Old Bridge Education Association (Association). The contract provides in paragraph C of Article X that "[t]eachers shall be notified of their contract and salary status for the ensuing year no later than April 30th." There is no claim that Wolfe was laid off in bad faith. We affirm PERC's determination substantially for the reasons it gave. *R.* 2:11–3(e)(1)(E). While the statute preempts Wolfe's tenure and contract rights to employment, it does not preempt the right to negotiate reasonable termination procedures consistent with the policy of the statute. *See N.J. State College Locals v. State Bd. of Higher Educ.,* 91 *N.J.* 18, 32, 34 (1982) and *In re IFPTE Local 195 v. State,* 88 *N.J.* 393, 410 (1982).

The more difficult problem is the measure of damages, an issue not directly before us. Because the contract provides no express remedy for late notice, PERC let the issue be determined by "binding arbitration" in accordance with the last step of the contract grievance procedure. We have been provided with two written opinions of the arbitrator. One, dealing with liability, was rendered before the PERC proceedings; the other, dealing with damages, was rendered during the pendency of this appeal.

As to liability, the arbitrator determined that the Board broke the notice provision of the contract and that Wolfe should therefore be "made whole." He cautioned that his opinion "does not include questions of interpretation or application of the laws of the State." As to damages, the arbitrator found that Wolfe had made reasonable but unavailing efforts to obtain similar part-time work and determined that the Board must make her whole by paying a full year's salary together with fringe benefits. Pursuant to *N.J.S.A.* 2A:24–7, the Association commenced suit in the Chancery Division to confirm the award. Advised of

this appeal, the Chancery Judge stayed further proceedings anticipating guidance from us.

 Negotiated lay-off procedures may not take away the right *N.J.S.A.* 18A:28–9 gives boards of education to reduce their work force at any time for statutory good cause. The arbitrator's award, expressly made without regard to the statute, denies the Board that right. We exercise our original jurisdiction to set aside the award as it is necessary to do so in order to determine completely the issues on this appeal. *R.* 2:10–5.

*N.J.S.A.* 18A:28–9 provides:

*Reduction of force; power to reduce and reasons for reduction*

Nothing in this title or any other law relating to tenure of service shall be held to limit the right of any board of education to reduce the number of teaching staff members, employed in the district whenever, in the judgment of the board, it is advisable to abolish any such positions for reasons of economy or because of reduction in the number of pupils or of change in the administrative or supervisory organization of the district or for other good cause upon compliance with the provisions of this article.

The purpose of the statute is to permit a school board to terminate employees any time it determines in good faith that a reduction in force is necessary. By assuming that Wolfe is entitled to a full year's salary subject to mitigation, the arbitrator undermined the essential legislative intent that school employees not be paid their salaries if there is no work for them to do.

 A fair accommodation of the statutory purpose and an employee's contract right to notice requires that damages, if any, be based on the adverse effect of the late notice, not on the adverse effect of the termination of employment. The termination was lawful under the statute; Wolfe need not be made whole as though she had not been terminated. In the absence of a contract provision for payment of a sum that is reasonable in the event of late notice,[2] the damages award will be based on

---

[2]We need not decide the extent to which such a payment is negotiable.

whatever economic harm Wolfe may have suffered by reason of the two-month delay in receiving notice.

A distinction must be made between late contract notice to any teacher of a RIF termination and late statutory notice to a nontenured teacher that he will not be employed another year. If a nontenured teacher does not receive the latter notice by April 30, "the board of education shall be deemed to have offered to that teaching staff member continued employment for the next succeeding school year . . . ." *N.J.S.A.* 18A:27–10 and –11. Our conclusion does not result in tenured teachers being treated differently from nontenured teachers. A nontenured teacher claiming the benefit of *N.J.S.A.* 18A:27–11 would still be subject to the board's broad right to RIF pursuant to *N.J.S.A.* 18A:28–9.

The PERC determination is affirmed. The arbitration award is set aside. In the matter now before the Chancery Division, that court is directed to enter an order providing for re-submission of the damages issue to arbitration in accordance with this opinion.

PETRELLA, J.A.D., dissenting.

I respectfully disagree with the majority opinion's interpretation of *N.J.S.A.* 18A:28–9, and accordingly dissent. As I view the statute, boards of education have the right to reduce employment in their respective districts for reasons of economy or because of reduction in the number of pupils, and this right is unencumbered by any other law regarding education or tenure.

Because all contracts with public employees implicitly are subject to applicable law, *N.J.S.A.* 18A:28–9 is in effect part of the employment contract between the Township of Old Bridge Board of Education and the Old Bridge Education Association. *State v. State Supervisory Employees Ass'n,* 78 *N.J.* 54, 80 (1978); *Tp. of West Windsor v. Public Employment Relations*

*Comm'n,* 78 *N.J.* 98, 107 (1978). Indeed, Art. 36 of the Agreement between the parties here expressly recognizes that if any provision of the agreement is held contrary to law, it shall not be of any effect.

*N.J.S.A.* 18A:28–9 controls reductions in force and preempts any inconsistent provision of a negotiated agreement. *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 81. The statute clearly expresses the Legislative intent that nothing is to limit the right of the public employer in such situations to reduce the number of teaching staff members. To impose a period of time for which an employee would have to receive notice or be paid for an alleged breach of contract might not only act as a deterrent to boards of education from taking appropriate action to reduce staff when necessary, but also would be a limitation on the right of the board of education to reduce that staff.

*N.J.S.A.* 18A:28–9 reads:

> Nothing in this title or any other law relating to tenure of service shall be held to limit the right of any board of education to reduce the number of teaching staff members, employed in the district whenever, in the judgment of the board, it is advisable to abolish any such positions for reasons of economy or because of reduction in the number of pupils or of change in the administrative or supervisory organization of the district or for other good cause upon compliance with the provisions of this article.

"Reduction in force (RIF), whether of tenured or nontenured teachers, if done for reasons of economy, is entirely within the authority of the board." *In re Maywood Bd. of Educ.,* 168 *N.J.Super.* 45, 55 (App.Div.1979), certif. den. 81 *N.J.* 292 (1979). *Accord, Spiewak v. Rutherford Bd. of Educ.,* 90 *N.J.* 63, 80 (1982) and *Klinger v. Cranbury Tp. Bd. of Educ.,* 190 *N.J.Super.* 354, 357 (App.Div.1982). In effecting such reductions, a board must be guided by seniority:

> Dismissals resulting from any such reduction shall not be made by reason of residence, age, sex, marriage, race, religion or political affiliation but shall be made on the basis of seniority according to standards to be established by the commissioner with the approval of the state board. [*N.J.S.A.* 18A:28–10.]

This is not to say that a staff member should not, when practicable, be given some reasonable notice of discharge as is customary in employment situations. However, provision for voluntary, optional notice periods is far different from requiring that contract compensation be paid here if four months' notice was not given.

The case before us is different from the notice aspects involved in *State v. State Supervisory Employees Ass'n, supra* and *New Jersey State College Locals v. State Bd. of Higher Educ.,* 91 *N.J.* 18 (1982), because in those cases the employees already had statutory rights to some notice for the particular events involved and some additional leeway through the negotiated process was not considered preempted. Here, there is no such statutory requirement.

Furthermore, under this statute reduction in force by a board of education would appear to be nonnegotiable. *In re Maywood Bd. of Educ., supra,* 168 *N.J.Super.* at 52. *Cf. In re IFPTE Local 195 v. State,* 88 *N.J.* 393, 408 (1982) and *New Jersey State College Locals v. State Bd. of Higher Educ., supra,* 91 *N.J.* at 32. The arbitrator's award in this case would significantly interfere with management prerogatives in reductions in force. *In re Paterson Police P.B.A., Local # 1 v. Paterson,* 87 *N.J.* 78, 86 (1981); *Bd. of Educ. of Woodstown-Pilesgrove Regional School Dist. v. Woodstown-Pilesgrove Regional Educ. Ass'n,* 81 *N.J.* 582, 591 (1980); *State v. State Supervisory Employees Ass'n, supra,* 78 *N.J.* at 67.

Accordingly, I would reverse PERC's determination and set aside the arbitrator's award in its entirety.